IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| F.A.H., *a minor, who sues by and through her mother and next friend*, KAREN WEBB, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:04-CV-00875-B |
| v. | ) | [WO] |
| | ) | |
| JOANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER ON MOTION

Plaintiff Karen Webb ("Webb"), on behalf of her minor daughter  F.A.H. ("FAH"), appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying the child's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*.  Judicial review proceeds pursuant to 42 U.S.C. §405(g) and 28 U.S.C. §636(c).  Considered examination of the record, briefs, and relevant law inform the court's conclusion that the Commissioner's decision should be reversed and remanded for consideration of new and material evidence.

### I.  PROCEDURAL HISTORY AND ADMINISTRATIVE FINDINGS

Webb's July 20, 2001 application alleged that FAH became disabled in February 2001.[1] Following administrative denial of the application, FAH  received a hearing before an administrative law judge ("ALJ"), who rendered an unfavorable decision.

---

[1]The ALJ's written decision cites to an alleged February 1, 2001 disability onset date. (R. 16). However, on both the Disability Report-Field Office and the Disability Report-Child, the alleged onset date is February 27, 2001. (R. 40, 46).

Only eight years old at the time of the hearing and enrolled in the second grade, FAH claimed disability due to attention deficit hyperactivity disorder ("ADHD"), depression, headaches and asthma.  Predictably, she has never engaged in substantial gainful work.   The ALJ determined three severe impairments  –  ADHD,  dysthymic disorder, and asthma – but also found that the child suffered no impairment or combination of impairments that meets or medically or functionally equals in severity one set forth in the Listing of Impairments.

 The child's  mother testified during the hearing and her allegations were deemed not fully credible.  The ALJ concluded that the child's impairments did not result in "marked and severe" functional limitations, and accordingly, that she was not disabled under the Social Security Act.[2]

Webb responded to the ALJ's adverse decision on June 20, 2003, with an unsuccessful request for review by the Appeals Council; consequently,  the ALJ's decision became the final

---

[2]R. 17, 20-22. The ALJ's disability analysis followed the three-step sequential evaluation process applicable for childhood disability cases set forth in 20 C.F.R. §§ 404.1382c and 416.924 and summarized in *Shinn v. Commissioner of Social Security*, 391 F. 3d 1276, 1278-79 (11th Cir. 2004):

> The process begins with the ALJ determining whether the child is 'doing substantial gainful activity' in which case she is considered 'not disabled' and is ineligible for benefits.  20 C.F.R. §416.924(a),(b). The next step is for the ALJ to consider the child's 'physical and mental impairments' to determine if she has an 'impairment or combination of impairments that is severe'.  *Id.* §§416.924(a)(c)...For an applicant with a severe impairment, the ALJ next addresses whether the impairment 'causes marked and severe functional limitations' for the child.  20 C.F.R. §§416.924(b), 416.924(d).  Limitations arising from pain count in this determination.  *Id.* §416.924(a)...A child's impairment is recognized as causing 'marked and severe functional limitations' if those limitations 'meet[], medically equal[], or functionally equal[] the Listings.' *Id*. §416.911(b)(1); *see also* §§416.902, 416.924(a)...Assuming that the limitations stemming from a child's severe impairment meet, medically equal, or functionally equal the limitations specified in the Listings, the ALJ concludes by ensuring that the impairment 'meets the duration requirement' specified in the federal regulations.  *Id*. §416.924(a).  This 'duration requirement' is that the impairment must 'be expected to cause death or...has lasted or can be expected to last for a continuous period of not less than 12 months.' 20 C.F.R. §416.906; see also id. §416.909.

decision of the Commissioner.

Just a month or so following the ALJ's decision, Webb filed a second disability application for FAH on July 22, 2003, alleging her onset date as February 1, 2001.  Approximately two months later, Webb filed this appeal from the ALJ's initial ruling.  After a different ALJ ruled favorably in early 2005 on the second application, on June 22, 2005, Webb filed for  FAH a motion for remand which attached the favorable decision as a basis for reconsideration of the first ruling.[3]

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.   The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will

---

[3]Plaintiff's Submission of New and Material Evidence and Renewed Motion for Remand ("*Mot.*")(Doc. 16).

affirm, even if the court would have reached a contrary result as finder of fact, and even if the court

finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937

F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*,

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to

determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986)

(court also must consider evidence detracting from evidence on which Commissioner relied).

The district court will reverse a Commissioner's decision on plenary review if the decision

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to

determine that the Commissioner properly applied the law. *Keeton v. Department of Health and*

*Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). The case may be remanded to the

Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42

U.S.C. § 405 (g)[4]; or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098

(11th Cir. 1996).

### III. ISSUES

Contrary to explicit instructions, Webb filed a "proposed report and recommendation", which

does not include a "Statement of the Issues" but instead identifies two "claims on appeal":[5]

---

[4]Sentence six of 42 U.S.C. § 405 (g) authorizes the court to order " additional evidence to be taken before the Commissioner ... upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Because the parties must file modified findings of fact, the court retains jurisdiction and does not enter a final judgment until the completion of sentence six remand proceedings. *Jackson*, 99 F.3d at 1095.

[5]*See* Plaintiff's Proposed Report and Recommendation at 3 ("*Pl.'s Br.*")(Doc. 9, filed Feb. 7, 2005) *and* Order filed September 22, 2004 (Doc. 3)(directing Plaintiff to a brief in support of her

1.      The ALJ erred in rejecting a source opinion statement.

2.      The ALJ failed to provided required rationale.

**Plaintiff's counsel is advised that hereafter similar non-compliance with this court's order will result in rejection of the brief.**

Both of the specified claims challenge the ALJ's functional equivalency assessment at the third and final step of the sequential evaluation process dictated for child disability claims. Webb's remand motion is governed by sentence six of 42 U.S.C. §405(g).

## IV.  DISCUSSION

### A.      Functional Equivalency

In order to functionally equal the Listings, a severe impairment or a combination of impairments must result in "marked" limitations in two of the following domains of functioning or an "extreme" limitation in one of the following domains: (1)acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. §416.926a(a); 20 C.F.R. §416.926a(b)(1).  A "marked" limitation occurs when the impairment(s) interferes seriously with the ability to independently initiate, sustain, or complete activities while an "extreme" limitation occurs when the impairment(s) interferes very seriously with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. §416.926a(e).  Challenged on this judicial review is the ALJ's functional equivalency assessment that the minor plaintiff's impairments "do not result in 'marked and severe' functional limitations." (R.22).

---

claim(s) and to include in her brief a section titled "Statement of the Issues" which "shall state in a concise, and specific manner each issue which the plaintiff presents to the court for resolution").

1.      *Consideration of April 29, 2003 Source Opinion*

Webb claims reversible error in the ALJ's rejection of an April 29, 2003 Attention Deficit

Hyperactivity Disorder Form and related Child Development and Functioning Rating, received from

the child's school and described by Webb as a "source opinion statement"; the form indicated an

extreme limitation for the child in the domain of health and well-being and a marked limitation in the

domain of interacting and relating to others.[6]  For reasons stated as follows, the ALJ "d[id] not accept

the opinions stated in the attention deficit hyperactivity disorder report and in the child development

and functional rating assessment dated April 29, 2003":

> The form is unsigned.  While accepting that an individual at the claimant's school
> completed the forms, it fails to indicate what relationship the individual had [to] the
> claimant and what these conclusions were based upon.  Furthermore, these opinions
> as expressed are in contradiction to the comments made on the forms themselves and
> to the opinions of the 1st grade teacher, who was with the claimant daily for six
> months.  First the form reported that the claimant had extreme limitations in the area
> of health and physical well-being and marked limitations in interacting and relating to
> others.  Yet, the respondent commented that the claimant's "actions are no more than
> the actions of a normal second grade child", apparently referring in part to the
> claimant's ability to interact and relate to others.  (Exhibit 10E) In addition the
> respondent reported that the claimant had a "marked" inattention but a "less than
> marked" degree of limitation in attention and completing tasks.  These opinions are
> inconsistent with each other.  They are also inconsistent with the opinions of the 1st
> grade teacher.[7]

The Social Security Administration acknowledges that "[e]very child is unique, so the effects

of [the child's] impairment(s) on [her] functioning may be very different from the effects the same

impairment(s) might have on another child.  20 C.F.R. §416.924a(a)(2).  Accordingly,  the

regulations explain that information from teachers or other school personnel may be helpful in

---

[6]*Pl.'s Br.* at 3-4.

[7]R. 19-20.

assessing the effects of the impairments on the child's activities and functioning on a day-to-day basis compared to other children the same age who do not have impairments.  20 C.F.R. §416.924a(a)(2)(iii).

Here, the ALJ expressly considered information from the child's school.  The ALJ summarized correctly the functional limitations specified for FAH  but noted that the April 29, 2003 assessment  was unsigned, failed to indicate what relationship the source had with FAH  and failed to indicate upon what the conclusions were based.[8]

According to Webb, the ALJ "did not need to expend an inordinate amount of time and review to establish that [FAH] had only one teacher in the second grade."  Any failure on the part of the ALJ to assign the April 29, 2003 assessment to the child's second grade teacher is extinguished by his acceptance that the assessment was completed by someone at the child's school.   E v e n assuming the child's  second grade teacher provided the April 29, 2003 assessment, there is absolutely no basis to conclude  that the opinions "would be subject to the same amount of deference" as those expressed by the first grade teacher.[9]  The regulations do not dictate that the ALJ accord the same weight to opinions expressed by two school employees simply because both sources hold the same or a similar position within the school or because both sources spent the same amount of the time with the child.  Instead, the ALJ is to consider all of the relevant evidence in the record, weigh the evidence and articulate adequate reasons for his decision.[10]

---

[8]R. 19.

[9]*Pl.'s Br.* at 4.

[10]20 C.F.R. §416.924a9(a)("We will consider all relevant information (i.e., evidence) in your case record."); 20 C.F.R. §416.927(c)(2)("If any of the evidence in your case record, including any medical opinions, is inconsistent with other evidence or is internally inconsistent, we will weigh all

Webb deems  the April 29, 2003 assessment "particularly significant in light of the fact

that...[FAH's] psychiatric source did not directly address her functional capabilities" and  it  was "the

most recent record".[11]     However, careful scrutiny of the evidentiary record compels this court to

conclude, as now discussed,  that substantial evidence supports the ALJ's rejection of the April 29,

2003 opinions.

The ALJ noted properly both the lack of explanation for the conclusions expressed in the

reports,[12] and material inconsistencies in the opinions stated.  On the ADHD form, the source opined

that FAH had a marked limitation in inattention but on the Child Development and Functioning

Rating, the source opined that FAH had a less than marked limitation in attending and completing

tasks.  Furthermore, the ALJ pinpointed as inconsistent the source's opinion of functional limitations

---

of the evidence and see whether we can decide whether you are disabled based on the evidence we have."); *see Cowart v. Schweiker*, 662 F. 2d 731, 735 (11th Cir. 1981)("The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for his decision...to enable a reviewing court to determine whether the ultimate decision is based on substantial evidence.").

[11]*Pl.'s Br.* at 4.  Webb also urges that the ALJ "could have recontacted this source for clarification instead of dismissing the opinion out of hand".  (*Pl.'s Br.* at. 4). However, to the extent that this claim underscores the ALJ's prerogative to recontact sources for more information, remand is not warranted in light of this court's conclusion that substantial evidence supports the ALJ's rejection of the opinion.

[12]R. 19.  The ADHD form requested the source to place a check mark for the appropriate degree of functioning (mild, moderate, marked or extreme) in three areas: inattention, impulsiveness and hyperactivity. The source filled out the form but did not sign it or provide any comments.  (R. 128).  Similarly, the two-page Child Development and Functional Rating form requested the source to place a check mark for the appropriate degree of functioning (no evidence, less than marked, marked, or extreme) in the same six domains under the regulations: health & physical well-being, acquiring and using information, attending and completing tasks, interacting & relating to others, moving about & manipulating objects and caring for self.  The source filled out the form, but failed to sign it.  While the source commented on the child's actions in comparison to other children her age, the source did not provide any basis for the opinions. (R. 129-130).

for FAH and the source's comment on the same assessment, indicating the child's "actions are no more than the actions of a normal second grade child."

The ALJ also properly highlighted inconsistencies between the April 29, 2003 opinion of marked limitation in interacting and relating to others and other evidence in the record – namely a February 4, 2002 Teacher Questionnaire completed by FAH's first grade teacher, who viewed as age-appropriate the child's interaction and relation with others and found her well liked by her peers.[13] Similarly, the ALJ highlighted as inconsistent the source opinion that the child had a marked limitation in inattention with the first grade teacher's assessment of the child's age-appropriate ability to complete tasks as well as her notes that the child received help only for unclear instructions and because she missed half of the work due to doctor's visits.[14]

The ALJ's functional equivalency assessment also considered the findings of Dr. Curry Hammack, who completed a psychological evaluation on January 7, 2002. The ALJ gave "significant weight" to Dr. Hammack's diagnosis and deemed his conclusions "consistent with the record as a whole." Dr. Hammack opined that FAH's mental impairments "do not seem to be overly problematic in regard to her success at school."[15] In sum, the court concludes that substantial evidence supports this ALJ's rejection of the April 29, 2003 source opinions.[16]

---

[13]R. 20, 80-82.

[14]R. 20, 78.

[15]R. 166-168.

[16]Webb also contends that the ALJ gave substantial weight to the opinions of the staff at Behavioral Medicine even though no opinions were in the record. (*Pl.'s Br.* at 4.). As the Commissioner correctly notes, it "appears that the ALJ was merely indicating that he considered the evidence..and found it was [sic] generally supported by his decision". (*Def.'s Br.* at 7). In fact, the ALJ did not specifically cite to these records to reject the April 29, 2003 source opinion. Rather, the

   *2.     Consideration of Other Evidence*

Webb also challenges the ALJ's functional equivalency assessment for his alleged failure "to provide any meaningful analysis of each domain, instead lumping them all together with an immediate conclusion next to each".[17] The court deems unnecessary any detailed discussion on this claimed error as it is patently unsupported by the record. The ALJ adequately summarized the evidence in the record, articulated the weight accorded to the evidence, including a detailed explanation for his rejection of the April 29, 2003 school source opinion and then rated the child's functioning in the six domains.

In addition, Webb contends that the ALJ "failed to take account of the likelihood that [the child's] conditions worsened from first to second grade based on teacher assessments, number of absences, medication changes in 2003, and the referral to Behavioral Medicine on January 28, 2003 by her treating clinic."[18]   However, review of the ALJ's decision and the evidentiary record does not support this claimed error.

As discussed in the preceding section, the ALJ properly considered and weighed the opinions

_____

ALJ summarized all the evidence in the record, including records from Behavioral Medicine, articulated the weight he assigned to the evidence and then made a step-two finding on the severity of the child's impairments. (R. 18-20).

   [17]*Pl.'s Br.* at 4.

   [18]*Pl.'s Br.* at 5. Absent is any evidentiary support that FAH's condition worsened from first grade to second grade. While a progress note entry dated January 28, 2002 indicates that a "referral was faxed to Behavior Medicine" (R. 227), there is no indication that this referral was made due to any decline in the child's condition or any other basis for the referral. In fact, the record reveals treatment at Behavioral Medicine from February 27, 2001 to March 26, 2003. (R. 153-165, 195-198, 223-225). Webb testified at the hearing that she normally does not have to take FAH to the hospital for asthma because the medications help. While the child's asthma may get worse during weather changes, Webb testified that the asthma is under control with medications once the weather adjusts. (R. 281, 285).

provided in school records regarding the child's functional limitations.  To the extent that Webb's

claimed error suggests  the ALJ's disregard of his duty to consider a temporary removal or absence

from the child's  educational program on her  ability to function compared to other children the same

age who do not have impairments, *see* 20 C.F.R. §416.924a(b)(7), there is no indication that such

absences resulted in marked or extreme limitations in the six domains of functioning.

Acknowledging the ALJ's documentation of the child's placement on medication, Webb

nonetheless contends that the ALJ did not discuss the effects of medication as required.  While the

ALJ is duty-bound to consider the effects of medication or other treatment in his assessment of her

functional limitations,[19] review of the record does not compel remand.  For instance, the ALJ noted

Webb's testimony that FAH did not experience any side effects from medication.[20] Similarly absent

is any support,  warranting remand, for the ALJ's alleged failure "to mention a single medication by

name" and to discuss a pharmacy print out of medications.[21]  *See Dyer v. Barnhart*, 395 F. 3d 1206,

1211 (11th Cir. 2005)("[T]here is no rigid requirement that the ALJ specifically refer to every piece

of evidence in his decision, so long as the ALJ's decision...is not a broad rejection which is not

enough to enable the district court or this Court to conclude that the ALJ considered her  medical

condition as a whole.").  Accordingly, remand is not warranted for any claimed error in the ALJ's

assessment of the child's functional limitations.

---

[19]See 20 C.F.R.§§ 416.924a(b)(9) and 416.926a.

[20]R. 17, 19, 286.

[21]*Pl.'s Br.* at 5.

**B.**      **Remand for Consideration of New Evidence**

Webb finally contends that remand is warranted for consideration of the favorable ALJ

decision on the subsequent application, which relied in part on IQ testing performed in August 2003

and November 2004 , and medical expert testimony that the child's impairments equaled in severity

Listing 112.05D for mental retardation.[22]    Webb attaches to her motion the February 24, 2005

favorable decision by Administrative Law Judge Michael D. Anderson.  However, Webb did not

submit to this court the relevant IQ testing.  The Commissioner argues principally that the IQ testing

fails to satisfy the *materiality* prong of the three-pronged standard for remand set forth under

sentence six of 42 U.S.C. §405(g) and articulated by the Eleventh Circuit.[23]

Webb's motion for remand and her reply to the Commissioner's opposition raise some

ambiguity on her intent to posit as "new evidence" the ALJ's favorable decision or the IQ testing.

Assuming she intended the former,[24] it would be inappropriate for this court to order the first ALJ

to reconsider the merits of his adverse decision based solely on another ALJ's favorable decision on

Webb's subsequently filed application specifying a new basis for disability and new medical expert.

---

[22]*Mot.* at 1.

[23]Defendant's Objection to Plaintiff's Motion for Remand at 2 ("*Def.'s Objection*")(Doc. 18,
filed July 5, 2005).To secure a remand under sentence six of 42 U.S.C. § 405(g) for administrative
consideration of new evidence, the claimant must establish that  (1) there is *new, non-cumulative
evidence*;  (2) the evidence is *material*  because it is relevant and probative so there is a reasonable
possibility that it would change the administrative result; and (3) there is *good cause* for failure to
submit the evidence at the administrative level. *Vega v. Commissioner of Social Security,* 265 F. 3d
1214 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998);  *Hyde v. Bowen*, 823
F.2d 456,459 (11th Cir. 1987);  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

[24]Webb argues that "the evidence could not have been procured earlier since the subsequent
ALJ decision by definition arose after the date of the ALJ decision under appeal". (*Mot.* at 2).

The Social Security Act limits a district court's jurisdiction to *a civil action* brought to review "a final decision of the Commissioner of Social Security."[25] No civil action has been filed in response to the Commissioner's final decision awarding benefits to FAH on her disability application filed subsequent to the application underlying the present complaint.[26]

Because Webb's remand submissions also can be construed reasonably to indicate her intent that the IQ tests be considered as the "new evidence" warranting *sentence six* remand, [27] the court's due consideration of this evidence – as summarized in the favorable decision – pursuant to the relevant criteria compels a remand for further administrative consideration. Reported is the substance of the IQ tests administered to FAH on August 20, 2003 and September 4, 2003 by Behavioral

---

[25]Section 405(g) states in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

[26]It is not clear to the court whether Webb's request to consider the subsequent ALJ decision and award of benefits constitutes a reopening of the subsequent application. The scope of the ALJ's remand considerations is guided sufficiently by the Commissioner's regulations. For example, the regulations provide a mechanism by which a Commissioner may decide on her own initiative to reopen a final determination. *See* 20 C.F.R. §416.1487 and 20 C.F.R. §404.987.

[27]Noting that "the evidence could not have been procured earlier...because the evidence pertinent to the medical expert's consideration related to testing performed after the prior ALJ decision," Webb requests that "the case be remanded to the ALJ for consideration of Listing 112.05D from February 2001." (*Mot.* at 2). In addition, Webb's reference to "the nature of the evidence acquired and expert review of the totality of the evidence" suggests her desire that the IQ testing constitutes the new and material evidence sufficient for remand. *Pl.'s Resp.* at 1 (Doc. 19, filed July 14, 2005).

Medicine [28]  and by Dr. Daniel C. Clark, Ph.D. on November 15, 2004.[29]

Neither the *new and non-cumulative* prong  nor the *good cause* prong of the three-part

standard for remand is disputed; instead, *materiality* is controverted.   The Commissioner contends,

in sum: "the testing ... was performed 2 months and 16 months respectively after the ALJ's initial

decision" and "[a]s such, does not relate to the period from July 2001 through June 20, 2003, the

---

[28]The ALJ summarized as follows the testing in 2003:

The claimant continued to follow up for treatment with Behavioral Medicine for problems, of hyperactivity, anger, crying spells, insomnia, depression, disruptive behavior, and medication management.  She was administered the WRAT-3 on August 20, 2003, and the WISC-III on September 4, 2003.  The results of the WRAT-3 show that the claimant is reading at a 1st grade level; spelling at a 1st grade level; and performing arithmetic at 1st grade level.  She obtained a Verbal IQ score of 63, a Performance IQ score of 54, and Full Scale IQ score of 55, on the WISC-III. The scores fall within the mild range of mental retardation.  The examiner suspects that the scores were severely depressed secondary to the claimant's ADD traits.  The examiner indicated that the claimant's overall functioning is in the upper end of mild mental retardation to lower level of borderline intellectual functioning (Exhibit B-3F).

*Ex. 1* at 8.

[29]The ALJ summarizes the report, in part:

When asked her reason for applying for disability benefits on the claimant's behalf, the mother reported, "She has asthma, ADHD and is in special education."...The special education was initiated last year. The claimant has discipline problems at school, including moving excessively, making inappropriate noises, excessive talking, out of seat and occasionally talking back to teachers.  In terms of mental status, the claimant was alert and oriented by two.  Her behavior was distant.  Her speech was within normal limits for rate and flow.  Her affect was blunted and her mood was reported to be "fine"...The claimant was administered the WISC-III.  She obtained a Verbal IQ score of 46, a Performance IQ score of 46, and a Full Scale IQ score of 40.  The results of this evaluation are considered invalid due to the claimant's extremely poor effort. Dr. Clark indicated that with optimal effort, the claimant's scores would likely fall in the mild range of mental retardation.  The diagnostic impression was mood disorder, NOS and rule out mild mental retardation....

*Ex. 1* at 8.

span of time covered by the ALJ's first decision."[30]

The court finds that the tests, though indisputably following the ALJ's decision underlying this judicial review, do relate to the child's mental condition and cognitive functioning prior to the decision.[31] Furthermore, Dr. Clark's November 2004 psychological evaluation included consideration of FAH's diagnosed ADHD – found to be a severe impairment by the ALJ in this appeal– and an assessment of her mental health status and resulting functional limitations alleged to be disabling since February 2001.

As a second basis for Webb's failure to satisfy the materiality prong, the Commissioner argues that Webb "initially alleged disability due to ADHD and depression, not mental retardation".[32] Eleventh Circuit caselaw suggests that if "new psychological evidence is related to the [plaintiff's] originally claimed disability," it may provide cause for remand. *Milano v. Bowen*, 809 F. 2d 763, 766 n.3 (11th Cir. 1987)(psychological evaluation deemed new and material evidence warranting remand though claimant alleged disability due to physical impairments but did include allegations of mental trauma).

---

[30]*Def.'s Objection* at 2.

[31]Both applications claim a disability onset date in February 2001. In the favorable decision, the ALJ summarized as follows the testimony of Dr. Doug McKeown, a medical expert:

> Dr. McKeown stated that the claimant was evaluated at Behavioral Medicine in September 2003 and diagnosed with mild mental retardation to mental retardation, but her scores were suppressed. Dr. McKeown stated that the claimant has IQ scores in the 60-70 range. He opined that these impairments equal in severity the criteria of §112.05D for mental retardation...**He also averred that this level of severity had been attained as of the alleged onset date.**

*Ex. 1* at 9 (emphasis added).

[32]*Def.'s Objection* at 2.

Although Webb did not specify initially any disabling mental retardation for FAH, she did allege two mental impairments – ADHD and depression.  During the 2003 testing, "the examiner suspect[ed] that the scores were severely depressed secondary to the claimant's ADD traits" and concluded that "the claimant's overall functioning is in the upper end of mild mental retardation to lower level of borderline intellectual functioning."[33] Evidence of her IQ testing and conclusions on any diagnosis of mental retardation are relevant to the determination of her mental health status and cognitive functioning.

The record demonstrates a reasonable possibility that the IQ testing and Dr. Clark's psychological evaluation would change the administrative result in light of the subsequent ALJ's disability determination of listing-level mental retardation, a decision undergirded, in substantial part, by these records.   Thus, the evidence is material.  The court concludes that Webb has demonstrated a basis for remand under *sentence six*  of 42 U.S.C. 405(g) for administrative consideration of this evidence.

## V.  CONCLUSION

For the reasons explained in the foregoing finding and conclusions, the court concludes that remand pursuant to *sentence six* of 42 U.S.C. §405(g) is warranted for consideration of new and material evidence:   IQ testing performed by Behavioral Medicine in 2003 and the November 2004 psychological evaluation conducted by Dr. Daniel C. Clark, including IQ testing administered during the evaluation. Therefore, it is hereby **ORDERED** that:

1.       The *Plaintiff's [ ] Renewed Motion for Remand* (Doc. 16, filed June 22, 2005) is

---

[33]*Ex. 1* at 8.

**GRANTED**.

2.    The decision of the Commissioner is REVERSED, and this case is REMANDED to

the Commissioner under *sentence six* of 42 U.S.C. §405(g) for further administrative

consideration.[34]


Done this 30th day of December, 2005.

                                        /s/ Delores R. Boyd

                                        DELORES R. BOYD
                                        UNITED STATES MAGISTRATE JUDGE

---

[34]In a *sentence six* ,42 U.S.C.§405(g), remand, the Commissioner **shall**:

after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the  Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.